United States District Court
Southern District of Texas
**ENTERED**
April 21, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY LEE TYLER | § | |
| | § | |
| Movant | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-02101 |
| | § | CRIM NO. 4:21-CR-0017-1 |
| | § | CRIM NO. 4:22-CR-408-1 |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM AND ORDER

Before the Court is Movant Timothy Lee Tyler's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civ. Doc. 1; Crim. Doc. 86).[1]  Tyler challenges his aggregated 480-month sentence for manufacturing and distributing child pornography.  He alleges that his trial counsel, Mr. Darryl Austin, rendered ineffective assistance of counsel in connection with his guilty plea.  The Government filed a motion for summary judgment in response to Tyler's motion, and Tyler filed a reply.  (Crim Docs. 93 & 96).  Having considered the motion, response, reply, and relevant law, the motion for relief under § 2255 is **DENIED**, the motion for summary judgment is **GRANTED**, the related civil action is **DISMISSED** with prejudice, and a certificate of appealability is **DENIED** for the reasons that follow.

---

[1] Citations to "Crim. Doc. ---" refer to docket entries in Crim. A. No. 4:21-cr-17-1; citations to "Civ. Doc. ---" refer to docket entries in Civ. A. No. 4:25-cv-2101.  The docket entries concerning this motion to vacate and responsive briefing in Crim. A. No. 4:22-cr-408-1 mirror those in No. 4:21-cr-17; for clarity, the citations to the criminal matters shall refer to those docketed in No. 4:21-cr-17.

## I.   BACKGROUND

The Court limits its recitation of the background facts to those necessary to address the issues raised in this motion to vacate.[2]  Tyler's sentence is the result of guilty pleas in two cases that were consolidated for the purposes of sentencing, Crim. Nos. 4:21-cr-17 and 4:22-cr-408.  Criminal case no. 4:21-cr-17 originated in Texas.  Criminal cause no. 4:22-cr-408 was originally filed in the Eastern District of Wisconsin, in cause no. 2:19-cr-139-PP, but was consolidated with cause no. 4:21-cr-17 after Tyler signed a "Consent to Transfer of Case for Plea and Sentence (Under Rule 20)" indicating that he consented to the disposition of the case in the Southern District of Texas, wished to plead guilty in the Wisconsin case, and waived a trial for that matter.  Crim. No. 4:22-cr-408 at Doc. No. 1.

According to the facts in the plea agreement for both cases,[3] the Texas case (4:21-cr-17) originated from a tip from an undercover FBI agent who was working a Kik[4] group in which members discussed renting their own minor daughters or the daughters of others.  The agent interacted online with Tyler, who used the alias "Luke Hendrix."  Tyler and the agent messaged each other several times, discussing sexually abusing their young daughters and talking about renting or swapping them.  Tyler later sent the agent videos of child pornography.  FBI issued an emergency disclosure to Kik that identified the IP address as a Suddenlink customer.  In response to a subpoena, Suddenlink identified the

---

[2] For a detailed account of the facts that formed the basis of this case, such may be found at Crim. Doc. 27 at 8-14 (Factual Basis for the Guilty Plea) (under seal), and a summary may be found at Crim. Doc. 93 at 3-5 (Motion for Summary Judgment).

[3] *See* Crim. Doc. 27 at 8-14 (under seal).

[4] According to its Wikipedia page, Kik is a "freeware instant messaging app from the Canadian company Kik Interactive." *See* Kik (app) - Wikipedia (last accessed on Apr. 17, 2026).

2 / 16

owner of the account, and agents went to the address in Conroe where the IP address was located. They interrogated the homeowner, who lived with his wife and nine children at the house, who insisted that he never sent anyone child pornography. The homeowner stated that he recently assisted Tyler, who was a family friend, by posting Tyler's bail and agreeing to be responsible for him. Tyler had been in jail on a charge of indecency with a child when the homeowner bailed him out. At the time, Tyler also had pending charges in the Eastern District of Wisconsin for distributing and possessing child pornography and was subject to pretrial release conditions in that case.

For approximately two weeks after being bailed out of jail, Tyler was at the Conroe house from 10 a.m. to 10 p.m. and then stayed at a nearby hotel each night. During that time, the young girls in the Conroe house complained to their father that Tyler was taking pictures of them. Tyler was arrested pursuant to a state warrant, and three of his cell phones were seized. Tyler's LG cell phone contained numerous files of child pornography, including pictures and videos of rape and torture of children. The LG phone also contained Kik chats with the undercover agent and several other Kik users. Tyler's ex-wife identified a girl in one of the images as her daughter and recognized several of the articles of clothing and blankets in the scenes, including a blanket she identified as belonging to Tyler.

The Wisconsin case originated in 2019, after the Department of Justice received tips in the spring of 2019 from the National Center for Missing and Exploited Children CyberTipline reports from Imgur, another social media site for sharing images, that traced back to Tyler at his mother and stepfather's home in Milwaukee where Tyler was staying

at the time. Milwaukee Police Department obtained a search warrant for the house, and the search yielded five flash drives and a laptop computer located in Tyler's bedroom. One flash drive reportedly contained 463 images and 162 videos of child pornography, including rape of a child by an adult male. At the time, Tyler was a registered sex offender under the supervision of the Wisconsin Department of Corrections. During an interrogation by Wisconsin officials, Tyler admitted that he had relapsed back into using child pornography and that he uploaded child pornography files in Imgur to share with other users.

As noted above, the Wisconsin case (Crim. No. 4:22-cr-408) was transferred to Texas and consolidated with the Texas case (Crim. No. 4:21-cr-17), and Tyler was convicted after pleading guilty to Counts 2 and 4 of the indictment in Crim. No. 4:21-cr-17, which charged him with distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and 2252A(b)(1) (Count 2), and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 4), and to Count 2 of the indictment in Crim. No. 4:22-cr-408, which charged him with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 2). In exchange for his guilty pleas, the Government agreed to dismiss the remaining counts in cause nos. 4:21-cr-17 and 4:22-cr-408 and to recommend a one-point reduction in his offense level pursuant to U.S.S.G. § 3E1.1(b) if his offense level exceeded 16 under U.S.S.G. § 3E1.1(a). Crim. Doc. 27 at 5. The plea agreement also warned Tyler that "any estimate of the possible sentencing range under the sentencing guidelines that he may have

4 / 16

received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court." *Id.* at 4. The agreement specifically advised Tyler that the Court is not bound by the Sentencing Guidelines because they are advisory, and he may receive a sentence that departs from those guidelines in the discretion of the Court. *Id.* at 5.

At re-arraignment, Tyler indicated that he understood the terms of his plea agreement and that distribution of child pornography carried a sentence of up to 40 years with a mandatory minimum of 15 years. Crim. Doc. 71 at 8. Tyler also stated he understood that the possession charges each carried a 20-year maximum, 10-year mandatory minimum sentence, and that his attorney had explained all of this to him. *Id.* at 9. Tyler indicated that he understood that the Court was not bound by the plea agreement and that it was possible that the sentence would be greater than he anticipated. *Id.* at 10. He also acknowledged that he was pleading guilty knowing that he could go to trial if he did not want to plead guilty. *Id.* at 14. He affirmed the background facts that form the basis of the charges against him, stated that he knew and understood the maximum sentences and the mandatory minimum sentences involved, and indicated that he was pleading guilty because he was guilty. *Id.* at 26, 30-31. This Court found that Tyler was fully competent of entering an informed plea, that he was aware of the charges and consequences of his pleas, and that his pleas of guilty were knowing and voluntary pleas

supported by an independent basis in fact containing each of the essential elements of the offenses. *Id.* at 31-32.

At sentencing, defense counsel objected to a five-point enhancement for obtaining valuable consideration in exchange for the child pornography and argued that only two levels should be added under U.S.S.G. § 2G2.2. Crim. Doc. 75 at 4. The court overruled that objection, finding that the enhancement applied because there was valuable consideration for the exchange of child pornography. *Id.* at 5. Based on the Government's contention that Tyler is a danger to society and unlikely to be rehabilitated given his recidivism, it recommended a sentence of 80 years with each of the counts of conviction running consecutively. The Government argued that Tyler is a documented child pornography recidivist who was found possessing of hundreds of files of images of child rape and torture and who had engaged in hands-on offenses like indecency with a child in 2015. *Id.* at 7-8. Defense counsel countered that Tyler was adamant that he did not produce the images and that he would have gone to trial rather than plead guilty to that. Defense counsel further contended that a life sentence, which is what the Government's recommendation would amount to, would not be appropriate, and argued for a sentence range of 15 to 30 years. *Id.* at 13. Defense counsel contended that a long sentence would signal to other criminal defendants that taking a plea and accepting responsibility is not valued in any way and that they would not receive any benefit from doing so. *Id.* He argued for the opportunity for Tyler to be rehabilitated and for a much shorter sentence than the one the Government advocated.

6 / 16

Tyler also addressed the Court, personally apologizing to his friends and their household who had bailed him out of jail and taken him into their home. He acknowledged that he needed punishment and stated that he works on improving himself every day to fight his addiction.

The Court adopted the factual findings and guideline applications in the presentence investigation report and sentenced Tyler in cause number 21-cr-17 to 360 months as to Count 2 in cause number 21-cr-17; 240 months as to Count 4 in cause number 21-cr-17; and 240 months as to Count 2 of 22-cr-408. Crim. Doc. 75 at 16. Each of these sentences were to run concurrently to each other but consecutive to the 120 months required under 18 U.S.C. § 3147 (providing an additional 120 months if the offense was committed while the defendant was on pretrial release), for a total aggregated sentence of 480 months in BOP custody, followed by a 20-year term of supervised release. *Id.* The Court noted that the sentence was based on the factors in 18 U.S.C. § 3553(a), to afford adequate deterrence to criminal conduct, protect the public from future crimes of the defendant, and provide a just punishment. *Id.* at 17.

Tyler appealed, and the Fifth Circuit affirmed the judgment but remanded for correction of a clerical error, finding that "the court's intent was to impose the enhancement [per 18 U.S.C. § 3147] on Tyler's conviction of distribution in 2020 and that it is 'by merely clerical mistake or oversight' that the judgments indicate otherwise." *United States v. Tyler*, Nos. 23-20273, 23-20274, slip op. at *2 (5th Cir. Jan. 31, 2024) (citing *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008)).

Tyler filed this motion to vacate under section 2255 after his appeal concluded. He claims that defense counsel was ineffective regarding his plea of guilty and that he did not understand the consequences of his plea. He claims that counsel told him that his punishment range was likely to be between 15-20 years, whereas he received an aggregated 40-year sentence. He argues that he received no benefit from pleading guilty instead of proceeding to trial.

## II.    LEGAL STANDARDS

### A. 28 U.S.C. § 2255

A § 2255 motion is the primary means of collateral attack on a federal sentence once a conviction has become final. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quotation omitted). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). The four grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under § 2255 are: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citations omitted). "The scope of relief under § 2255 is consistent with that of the writ of habeas corpus." *Id.*

The § 2255 petitioner carries the burden of establishing his claims by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). However, after a petitioner has been convicted and exhausted his appeals or waived the right to appeal, a presumption arises that the petitioner "stands fairly and finally convicted," *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)), and "a collateral challenge may not do service for an appeal." *Frady*, 456 U.S. at 165.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. *See* U.S. Const. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The right to counsel includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a petitioner must demonstrate both constitutionally deficient performance by counsel and actual prejudice because of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390–91 (2000).

9 / 16

The first prong of the governing standard is only satisfied where the petitioner shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance is "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove the second prong— prejudice—a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The two-part *Strickland* standard applies to ineffective assistance of counsel claims arising out of a guilty plea. *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990). To establish prejudice in relation to a guilty plea, the petitioner must demonstrate that there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To establish prejudice regarding a term of sentencing, a petitioner must demonstrate that "there was a reasonable probability that, but for [defense counsel]'s actions, [he] would have received a lesser sentence than he did." *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

A guilty plea waives all non-jurisdictional defects in the prior proceedings except for challenges to involuntariness and ineffective assistance of counsel that "directly

affected the validity of that waiver or the plea itself." *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004) (quoting *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002)). Such waiver includes "all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (internal citations omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "As a general rule, therefore, a convicted defendant may not collaterally attack a voluntary and intelligent guilty plea." *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991).

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A guilty plea is valid where "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56; *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

11 / 16

## III.    DISCUSSION

Tyler claims that his counsel rendered ineffective assistance in connection with his guilty plea.  He alleges that counsel was ineffective by (1) failing to properly calculate the Sentencing Guidelines and notify Tyler accurately about his sentence exposure; (2) failing to explain the relative consequences of pleading guilty versus going to trial; (3) failing to review discovery material and the applicable law; and (4) failing to investigate exculpatory or mitigating evidence.  Tyler claims that counsel's errors led to his decision to plead guilty, and but for counsel's errors, he would have proceeded to trial.  In his reply, he represents that he "pleaded guilty because of the assurances of his counsel that he would receive a sentence of 15-20 years' imprisonment."  Crim. Doc. 96 at 4.  He contends that his plea was not made with awareness of its true consequences and that absent counsel's errors, he would have proceeded to trial.  *Id.*

The record indicates otherwise.  His counsel objected to an enhancement under the Guidelines and argued for a sentence range of 15-30 years.  Counsel contended that rehabilitation would be the best route for Tyler, coupled with supervision. Tyler's allegation that counsel assured him that he would receive a sentence of between 15 and 20 years and that Tyler relied on that representation is contradicted by the record, where the plea agreement and re-arraignment admonitions repeatedly informed him of the possible long sentences he could receive.

The record further reflects that defense counsel stated at sentencing that he was not expecting the minimum possible sentence for Tyler (which Tyler's claim of 15-20 years

12 / 16

would represent) but pleaded for a much lower sentence than the one the Government sought. *See* Crim. Doc. 75 at 12-15. Tyler does not show that his counsel's performance fell below a reasonable level or that Tyler entered an involuntary, unknowing plea based on this record. Tyler fails to show that counsel's performance fell below the range of reasonable competence, given the set of circumstances and the evidence against Tyler in both cases, along with his criminal history of prior sex offenses.

Tyler does not state other specific facts to show that his plea was involuntary or unknowing. Tyler's conclusory assertions that counsel did not research the Guidelines, move to suppress evidence, or did not argue for mitigating circumstances are insufficient to demonstrate deficient performance or actual prejudice. *See United States v. Holmes*, 406 F.3d 337, 361 (5th Cir.) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.") (quoting *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)), *cert. denied*, 546 U.S. 871 (2005); *Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support a claim that counsel was ineffective for failing to investigate and present evidence). A habeas corpus petitioner who alleges counsel's failure to investigate must specify what the investigation would have revealed and how it would have benefitted his case. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir.) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)), *cert. denied*, 531 U.S. 931 (2000).

13 / 16

Further, Tyler cannot show that there is a reasonable probability that "but for [counsel]'s actions, [he] would have received a lesser sentence than he did." *Grammas*, 376 F.3d at 438. The record reflects that, while still in Wisconsin in 2019 and before his defense counsel was appointed in Texas, Tyler admitted to MPD officers that he had relapsed back into child pornography and that he uploaded child pornography to Imgur to share with others. Police found hundreds of images and videos on his hard drives in Wisconsin, some of which depict rape and torture of children. Had he proceeded to trial, these statements would have likely supported a guilty verdict, not just on the possession charge in that case, but also the distribution charge that was dismissed because he pleaded guilty.

Regarding the Texas case, Tyler was caught with images and videos on his LG cell phone, along with the chats with the undercover agent. Had he proceeded to trial, he would have faced all the charges from both cases, which included a charge for "sexual exploitation of a child," for the purpose of producing child pornography in addition to the distribution and possession charges. A jury likely would have heard about his statement to the MPD regarding the possession and distribution counts in Wisconsin and the testimony of his ex-wife in Texas stating that one of the children abused and depicted in the videos was her daughter and identifying Tyler's possessions on the video.

Had Tyler proceeded to trial, a jury would have heard the prurient details of his crimes, including evidence supporting Count 1 of the indictment in 4:21-cr-17, for sexual exploitation of a child for the purpose of producing child pornography charge (which he

14 / 16

adamantly denied and which charge was dismissed because of his guilty plea). That count carried, with his previous convictions for child pornography, a *minimum* of 35 years and maximum of life imprisonment. In addition, the Government argued for 80 years, and he received half of the sentence that was sought by the Government. There is no showing that, had he proceeded to trial, he would have received a lesser sentence than he did by pleading guilty to the possession counts and distribution count charged in the consolidated cases, with the most serious charge being dismissed in exchange for his plea. Therefore, he also cannot show actual prejudice from counsel's performance.

Because Tyler fails to show that his plea was involuntary and that it was caused by ineffective assistance of counsel, his motion must be **DENIED**.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is averse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100,

15 / 16

115 (2017) (citation and internal quotation marks omitted). The petitioner fails to meet this threshold, and a certificate of appealability is denied.

## V. CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1. Tyler's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. No. 1; Crim. No. 86; 4:22-cr-408 at Doc. No. 68) is **DENIED**, and this case is **DISMISSED** with prejudice.

2. Civil Cause No. 4:25-cv-2101 is **CLOSED**.

3. A certificate of appealability is **DENIED**.

4. All pending motions pertaining to this 2255 proceeding, if any, are **DENIED as MOOT**.

SIGNED this _____21st_____ day of April 2026.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE